of America, oral argument not to exceed 15 minutes per side, Hyland Hunt for the appellant. Hyland Hunt v. United States of America, oral argument not to exceed 15 minutes per side, Hyland Hunt representing Mr. Sullivan. I would like to reserve five minutes for rebuttal. Brady ensures that the jury and not the prosecutor is able to weigh the importance of evidence favorable to the defense. If evidence is favorable to the defense and it could very well affect the jury's decision, then it must be disclosed. Here the government failed to disclose precisely the sort of favorable evidence that it was the jury's province to weigh. At the least, given that the standard for an evidentiary hearing is that Mr. Sullivan is entitled to one, unless the record conclusively establishes that he's entitled to no relief, he is entitled to an evidentiary hearing or, at a minimum, a remand for the district court to take a look at this issue in light of the additional evidence that was gathered after this case was already on appeal, and for the district court to consider in the first instance the various issues raised by that evidence. Turning to the Brady claim, specifically the October 25th PNC Bank armed robbery, there's been a lot of dispute between the parties about how to characterize what happened with Mary Ann Vowles. She was the only eyewitness to identify Mr. Sullivan for this robbery, and in fact the government said she was the key witness, and she testified at length about how her abilities as a sketch artist made her particularly great at identifications. What the defense did not know, because it was not disclosed, is that two weeks after the robbery in 2000, two weeks, she was shown a photo array, and I would direct you to appendix page A237. So rather than characterize it, I'll just read it. Mary Ann advised that it didn't appear to be any one of them. Mary Ann did advise that it looked like number five, Mr. Sullivan, but skinnier. That was a failed photo array. She advised it did not appear to be any one of them. That was not provided to the defense. In addition, although the government makes much of the fact that she said it looked like Mr. Sullivan but skinnier, the picture that she was looking at was only two days old of Mr. Sullivan. So the fact that she said the robber was skinnier is actually even more exculpatory. That is not all. The government failed to disclose, as part of a pattern of disclosing none of the FBI witness interviews, except for one witness in this case. Her witness interview, in which she said that she did not see the robber as he left the bank. She had her head down. She couldn't see him. At trial, she testified that she was able to see him. He ran across the intersection. That was further impeaching evidence that was not disclosed, all of which would have undermined the only eyewitness. Again, that's not all. The government failed to disclose an FBI report in which the case agent, I think it's the case agent, we have a good faith basis for believing that based on the initials DW, concluded in November 2001 that the robber who committed the October 25th robbery was not the same as the robber who had committed the 2001 robberies that were charged in this case. That was not disclosed. Also not disclosed, fingerprint evidence. The government's case agent testified there was no fingerprint evidence in this case. There were no fingerprints that were considered evidence except for the one inculpatory fingerprint. That was the testimony. In actuality, there was a lot of fingerprint evidence that was thought to be the suspect's. There were fingerprints of value that did not match Mr. Sullivan. There were fingerprints for the October 25th robbery that were of value. They were sent through APHIS. They did not match. There were alternative suspects. The fingerprints were compared to Curtis Martin. The government says, well, you can't show that Curtis Martin was linked to the case. Well, we have not had an opportunity. This is the precisely sort of thing that should be fleshed out in an evidentiary hearing or at least with an opportunity for further factual development and discovery because presumably the police don't just pick a name out of a hat to run fingerprints through. So there should have been some kind of link between Curtis Martin and the crime. Otherwise, his fingerprints would not have been run. There were also two additional suspects whose car, it appears like the dog from the bank, tracked to where their car was. All of this adds up to a Brady violation. How do you get around the procedural default of the Brady violation, the alleged Brady violation? With respect to all of the items I just discussed, only two are potentially subject to procedural default, and that is the Boone County report of the failed photo array and the witness interview statement of Mary Ann Vowles. Everything else was not available to appellate counsel, and therefore the Brady violation itself under Strickler v. Green and procedural default, the inquiry is the same because the fact that the government failed to disclose its cause and prejudice comes from the same reason why it's a Brady violation. So if we look specifically at the two items that appellate counsel did have but did not raise on direct appeal, we get around procedural default because that was ineffective. If you look at McFarland v. Eukins, this court has laid out a number of factors. One of the key ones, well, two key ones. One was the issue that was not raised stronger than the ones that were raised. That's clearly true here because appellate counsel on direct appeal did bring a Brady claim, but he brought a Brady claim on the basis of information of unknown value. There were over 20 witnesses who testified or from other identification. We know they filled out forms after the robbery and gave them to the local police or wherever. Those forms have never been disclosed. We don't know what they say. They could be exculpatory. We don't know. That is what he made his Brady claim based on. A Brady claim based on clearly exculpatory evidence such as a failed photo array is a stronger claim and at the very least could have been included. Moreover, this court looks at was the omitted issue significant and obvious. This was very significant because this robbery alone subjected Mr. Sullivan to a 25-year mandatory minimum consecutive sentence. And so it was significant. It was obvious. Anyone who looks at this and says Mary Ann Val said it didn't appear to be any one of them would see how key that impeaching value was for her eyewitness identification at trial, and especially given that she was the only eyewitness and the other two eyewitnesses to this robbery could not identify Mr. Sullivan. Beyond the October 25th robbery, which we've shown enough at this point to establish a Brady violation, we have shown enough to get an evidentiary hearing on the remainder of the counts for two reasons. One, the government's entire theory at trial was that all of these robberies, there's one string, they're the same string, one robber, zero possibility. They stand or fall together. And so by taking one thread out, that's going to significantly affect the jury's assessment of the whole case. Moreover, there is a pattern of categories of evidence of exculpatory value that was not disclosed. The first are the witness interviews. With the exception of one statement that went to Mr. Sullivan's co-defendant, every witness that went to Mr. Sullivan alone, none of those FBI witness interviews were disclosed. None of the fingerprint evidence was disclosed, except for the one inculpatory piece of fingerprint evidence, which of course we also argue that trial counsel was ineffective for failing to pursue. And no evidence related to alternative suspects was disclosed. In addition, we know there's 400 pages that have not been released under FOIA from the FBI, and there are additional local police records that we've not been able to obtain under FOIA because they've refused to grant any requests. So there is material out there, and given the pattern of what we've shown to be undisclosed, that we believe there's good cause for an evidentiary hearing. At the least, even if this court is not comfortable with ordering an evidentiary hearing, the government itself has moved in a motion that has not been withdrawn, unless my colleague withdraws it today, to remand this case and allow the district court to take a look at this evidence in the first instance. And we agree, not everything was put before the district court. And we would, at the very minimum, like the opportunity to do that. And the district court can take the time to go through the evidence, consider it, consider what further factual development is required. And although we think the standard is met to order an evidentiary hearing, this court can order a remand short of that, simply to allow the district court to make that decision in the first instance. In addition, the government has conceded that resentencing is required, so the case has to go back for that reason as well. And although we stand on the briefs with respect to our ineffective assistance of counsel claim, we would make the point that that is linked to the Brady claim. Because if, under further factual development, we learn that trial counsel actually knew of some of this evidence, it then becomes part of the ineffective assistance of counsel claim. So to look, again, just at October 25th, what's left of the government's case when you consider what the government failed to disclose are three eyewitnesses, two who could make no identification, one who identified Mr. Sullivan two years after the robbery but could not identify him two weeks after the robbery. There is the fact that he paid his child support bill the same day at an unknown time as the robbery, but we already know that he worked in cash and that he had cash on him around this time. There's a jailhouse informant who testified as to bank robberies that didn't even ever happen. And that's it. That's all that's left of the case. That is not overwhelming proof. In light of the weakness of the evidence, we have shown a Brady violation given all that the government failed to disclose, or at least an evidentiary hearing. If I might ask you just one question to start because... Certainly, Your Honor. Opposing counsel say you're on record as seeking a remand to the district court so the district court could make a termination of the first instance. So can you say whether that's still your position or that's your position? And if so, what would you have the district court consider on remand? Well, I think that's a good question. Your Honor, while it is true that we have not formally withdrawn that motion, it is not our position that a remand is strictly necessary at this point. I think at the time that motion was made in response to Sullivan's motion to expand the certificate of appealability, and he filed numerous additional documents that he would have as part of the record at that point. The motion to supplement, though, that was filed post-appeal is more limited. It's about 50 or 60 pages of material that was attached as Exhibit K to the motion to supplement. And in light of that material and having taken a closer look at it against the balance of the evidence, we feel that it is not material, it is not exculpatory, and that this court could resolve the issue if it chose to do so on its own without a remand. So we do not feel that that's strictly necessary. I mean, the benefit is that you would have a district court determination, obviously, of the merits of that claim that this court could then review. The downside is that we'd be back up here on appeal should his Brady claim be denied. I think it's always an interesting dilemma in connection with the motions to supplement because presumably we have to look at the material that somebody wants to supplement. So once having looked at it, then why wouldn't we just simply consider it? I think that's what we're asking. You're okay with that? We are perfectly fine with that, and you're absolutely right. I mean, the standard for the motion to supplement is would this additional proffered material resolve beyond any reasonable doubt the issues in the case? We don't think that it would, but certainly you're going to have to look at it anyways. So you would have us grant the motion to supplement, or at least you don't object. You wouldn't have us remand unless we wanted the district court's separate and independent assessment of those additional matters raised in the motion to remand. Is that basically it? Right. If there's additional evidentiary, if there are untied ends from an evidentiary standpoint that are raised by the new supplemental documents, then perhaps a remand is appropriate. I don't think that there are, but that would be the only appropriate basis. I think just stepping back here, it's necessary to put the Brady claims in their context. And the context is this, that this appeal represents in many respects the third bite at the Brady apple that Sullivan has had. Most of the documents that are the basis for his current Brady claims, including the documents that were just discussed, he had at the time of his direct appeal, and he did not raise Brady claims based on those records. He had those same documents at the time that the magistrate judge denied his amended 2255 motion, and he did not file objections to that R&R. And therefore, he's procedurally defaulted those claims, and he's waived appellate review of those claims. What he does now is take the supplemental records that are of little value and weaves them together with records that he has had for 8, 9, 10 years in order to resurrect the waived claims. And we think that's procedurally improper because he had an opportunity to address Brady previously. He didn't do so, and those claims are beyond this court's review at this point. With respect to the merits, though, having put that in context, I mean, we can take the example that was discussed earlier about the October 25th robbery. It was not just Mary Ann Vowles who provided testimony that was relevant to Sullivan's guilt there. The jailhouse informant, I would encourage the court to look at his testimony, Verdell Hicks. What he said was that Sullivan had admitted to him in jail that he robbed a PNC bank, and in the course of that robbery that he took a .40 caliber handgun off of the security guard. He was the first witness that the jury heard on that particular robbery. A few witnesses later, the security guard gets up and testifies and says that the robber in question took a .40 caliber handgun off of him in the course of the robbery. Now, he could not identify Sullivan as that robber, but you have evidence in front of a jury that was persuasive. You had the confession that was relayed by the jailhouse informant corroborated by the security guard's testimony. Mary Ann Vowles, likewise, I think that the Boone County investigative report that says that it looked like Sullivan but skinnier is not material given her testimony. Defense counsel had, at the time of the trial, a composite sketch that was prepared  He entered that into evidence. The jury was able to compare that composite sketch to her testimony, compare it to surveillance photographs, compare it to Sullivan's appearance at trial, and make a determination, based on all that evidence, of her credibility as a witness as well as his guilt. I gather they never found the gun. Not the gun that he took from security. .40 caliber. Not that I'm aware of, Your Honor. So your argument is that the jailhouse snitch, with whatever his other motivations might have been, could not have known about the gun being taken in that robbery other than his... Through Sullivan. Exactly. The case agent's conclusion that Sullivan was not linked to that robbery, that was disclosed prior to trial. There's a portion of the Boone County investigative report, two paragraphs of it, that were produced to defense counsel prior to trial as Brady material, that say that agent Doug Warner went to the jail, talked to Sullivan, and concluded after that discussion that he did not commit the October 25th robbery. And that was disclosed. So that was available to the defendant. The fingerprints, the fact that the fingerprints didn't match Sullivan or match anybody, is not exculpatory. I mean, it is a busy public place. You have fingerprints taken all the time. The fact that it doesn't hit one of Sullivan's, under the circumstances, is not exculpatory and is certainly not material. And that... Remind me now, where were those fingerprints from? There were fingerprints taken from the site of the robbery on October 25th at this PNC bank in Union, Kentucky. And those fingerprints were determined to be of no evidentiary value in that they didn't match any of the suspects in the case, including Sullivan. And so information about the non-match was not disclosed to Sullivan as part of the pretrial disclosure because it was not exculpatory. You don't think it should have been turned over? I understand your point about, you know, whether it's material or exculpatory in the technical sense. But don't criminal defense lawyers argue all the time they have fingerprints? And Sullivan's the only one on trial. The other people are not. So the question is, in terms of Sullivan's case, did they take prints and did they find any that matched his, whether they could get them or not? That normally goes in, doesn't it? Well, the fact that it didn't match him was... I mean, that was testimony at the trial. It was undisputed that there were no fingerprints that matched Sullivan's at any of the banks except for Heritage Bank, the last bank in the string. So that was known to him. There was no fingerprint evidence linking him to that robbery. So what specifically is it that he's claiming wasn't disclosed to him? With respect to... The fingerprints. The fact that fingerprints were lifted from that scene, that they were scanned in against a suspect by the name of Curtis Martin as well as a couple others, and that they simply didn't match any of those suspects. But at trial, there was evidence that they lifted prints and that the prints didn't match Sullivan? Was that...? No, Your Honor. Just to be clear, that wasn't the evidence. The evidence that Doug Warner testified to was that there was a match of a fingerprint belonging to Sullivan at the last bank but none of the others. There was not evidence, however, that they lifted fingerprints from PNC Bank. And that's quite different than saying we don't have any fingerprints that match. One thing would be good to know that you try to get some and they didn't match. That's a little stronger. It may be. I'm not saying that it's a 100% clear cut that it should not have been disclosed out of an abundance of caution. I am saying that it's not material given the other evidence that was put into the record on this particular robbery. And so this is their best case, right? The October 25th robbery. The stuff that was not disclosed is not material, and I don't think it warrants an evidentiary hearing or a remand with respect to all of the other 11 robberies. The evidence was compelling for the whole string. This case did come up on direct appeal. The court found that the evidence was strong and sufficient with respect to three robberies in particular. With respect to Heritage Bank, a fourth one, it described the evidence as overwhelming. And that evidence still holds. I don't think it's really contradicted by the additional materials that Sullivan seeks to supplement the record with. But isn't your argument mainly that no prejudice has been shown? This is fairly substantial evidence, isn't it? I mean information. None of the FBI witness interviews were turned over, is that right? With the exception of one. However, for most of the witnesses who testified, we did produce pretrial, their handwritten notes and their robbery identification cards that they made immediately after the robbery. They didn't vary much from the interviews? Is that what you're saying? It's essentially the same thing? In most respects, that's true. I mean I think there are some minor discrepancies in some of them, and those have been pointed out by Sullivan's counsel. But not material. I mean minor discrepancies. And again, stepping back, these are not documents that the district court considered or the magistrate judge considered. The 2255 that this appeal addresses raised only one specific issue of Brady, and that was a 302 belonging to a witness by the name of Deborah Kenton. But otherwise made a very generalized argument that the government failed to disclose information. And the magistrate judge addressed the Deborah Kenton 302 in a footnote, and that specific finding was never objected to. And so the district court's attention was not focused on that issue, and now the current Brady claims are much, much more expansive than what was ever raised below. And I think that's the difficulty with this case, is that you had specific issues that were specifically addressed, and those aren't the issues that we're now talking about on appeal. Counsel below... On that connection, in connection with procedural default as it operates within a 2255, has he attempted to go back and present that additional evidence then to the district court or not? There were some additional materials that were presented to the district court, one that the magistrate judge didn't consider. So he filed a 2255. He filed an amended 2255. The magistrate judge ruled on that amended 2255. Sullivan, rather than objecting to that, filed a motion to amend his previously amended 2255, and he did present additional documents to the court at that time. He had obtained a fingerprint analysis by an expert a year before, five years after the trial. He presented that to the district court, that type of thing. So the district court... I'm not sure if I'm answering your question, but he did have additional records below. Well, if I understand it right then, some of these additional things he did exhaust, but you claim has now procedurally defaulted bringing them up before our court because of the failure to object to the R&R. And I'm gathering there are still other things then that have come up even subsequent to that? That's correct. And have they ever been presented below? No, Your Honor. So that's what the motion to remand deals with? Correct. Okay. And the motion to supplement sought to put most of those documents before the court. The trial counsel below was effective. I think that the magistrate judge's findings on that point are persuasive. And appellate counsel was as well. I think to get around the procedural default argument, Sullivan claims that appellate counsel should have presented different Brady arguments, but the Brady arguments that were presented were good. There was an allegation that the government agent had discarded hair and fiber samples taken from one of the robbery scenes, and that was the basis of the Brady motion. That's not a bad argument, and certainly not one that this court, even if it were to use hindsight, which it shouldn't, could say was objectively deficient. And that's what Sullivan has to show here in order to get around the procedural default hurdle. And so, in short, my time is almost up, but we would ask that this court affirm the district court's denial of the 2255 with the exception of its ruling on Sullivan's right to be resentenced. We agree that he should be resentenced under an advisory guideline scheme, and we'd ask this court to send it back to the district court for that limited purpose. Thank you. Thank you, counsel. Rebuttal? Starting first with the October 25 robbery, the context here is that the jury was instructed, consistent with this court's criminal pattern instructions, to view each count and view the evidence for that count separately. And indeed, this court and other courts have held Brady materiality is viewed count by count. So whatever the evidence on the other counts, it doesn't affect the evaluation of October 25. The government predominantly focused on the jailhouse informant. The jailhouse informant, Verdell Hicks, in addition to telling the story about the gun, talks about robberies that never happened. There were news reports, and I apologize, this is not in the record, there were news reports talking about the October 25 robbery, so he may have obtained information about the robbery from those. The security guard saw Mr. Sullivan in a show-up, not just a photo array, could not identify him. The other teller saw him in a photo array, could not identify him. Yes, Mr. Sullivan's trial counsel was able to introduce Mary Ann Val's composite sketch. That's a far cry from being able to stand up in front of Mary Ann Val's after she's discussed how great her identification ability is, because she's a sketch artist and she looks at facial features, and say, but two weeks after the robbery, Ms. Val's, you were unable to identify Mr. Sullivan from a photo array. Isn't that true? Defense counsel was not ever able to make that point. Moreover, on the fingerprint evidence, defense counsel repeatedly asked witnesses, did you see the robber touch surfaces? He tried to draw out the fact that there should have been fingerprint evidence. However, when the government's witness got on the stand, he said there's no fingerprint evidence. There are no fingerprints that are considered evidence. He never testified that fingerprints of value had been lifted from any of these scenes, and moreover, he went on to testify, look, it's very difficult to get prints from these scenes. A lot of the time, you don't get them. That left the impression in the jury's mind. As for Agent Warner's- We're still having a little trouble figuring out how, if the government says they don't have any fingerprint evidence, that then an exhibit that says, that corroborates that they don't have any physical, any fingerprint evidence is material. Even though there is that subtle difference of saying, well, we lifted some prints and we ran them and we couldn't match them with anybody. How could that be anything other than harmless? Well, of course, materiality has to be evaluated cumulatively with respect to the count, and we think that little addition does matter because what defense counsel specifically asked were, were there any fingerprints at any of the other scenes? The case agent said, no, no fingerprints, and then there's a dash, dash, that were considered evidence. That does not say there were suspect prints. That's how the FBI categorizes these. They were handled, the robber touched, they were of value, we ran all these comparisons. A defense counsel's in a much better, stronger position to make the precise claim he was trying to make when he was mentioning the fact that the robber touched all these surfaces. And particularly in light of the government coming back and suggesting, oh, well, the reason why there's no fingerprint evidence is that fingerprints are really hard to lift from these. But that's not all. The government is absolutely correct. Agent Warner did, at the time of the October 25 robbery, interview Mr. Sullivan and decide he was not a suspect. That was introduced before the jury. What was not introduced was Agent Warner's opinion in November 2001, after five robberies in 2001 had occurred, that the October 25 robbery was committed by someone different than those 2001 robberies. That goes directly to his testimony in this trial, that they're all one string, all part, you know, we always consider them one string. They're all similar. You know, no deviations. Turning to the procedural issues on objections. If you look at our reply brief on page 21, you'll see that Mr. Sullivan, although he captioned his pleading, and again, pro se pleadings are to be construed liberally, he captioned his pleading motion to amend and to recall the report and recommendation. But what it was, was a memorandum of law responding directly to the magistrate judge's statement in footnote 13, that his claim that the government withheld over 5302's unsub reports and other reports was without support. In his response to the district court, he provided that support. The district court considered it, said I've considered all of these things, considered on the merits. So that excuses waiver right there, as this court has said. No, we did not go back and present. After the additional material came through the FOIA, at the time, let me explain one other thing. At the time of the proceedings before the magistrate judge, Mr. Sullivan's appellate counsel had some of these files, but Mr. Sullivan did not. He subsequently got a copy of his file from appellate counsel. And that's how he was able to supplement with what he gave to the district court. Then we got 700 pages from FOIA. We did not go back to the district court at that time because the case was already up here. The district court had no jurisdiction. And Mr. Sullivan, pro se, had already filed every reconsideration material, motion available. There was no vehicle to go back to the district court. So, in conclusion, we have presented enough that at the least, the district court should be the one to take another look at this, particularly in light of the hundreds of pages that we haven't even seen yet. And we request that this court remand. Thank you, counsel. I note that you are appointed under the CJA, and we very much appreciate the work that you do.